FILED

SEP 20 2021

AT_____ O'CLOCK
John M. Domurad, Clerk - Albany

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ricardo Phipps     Plaintiff(s) | ) ) ) |
| vs. | ) |
| Northern Rivers - Michael Donahue, Kimberly Cummins, Linda Daley, Vernice Walker, Jessica Mitchell     Defendant(s) | ) ) ) ) |

Civil Case No.: 1:21-cv-1036 (BKs/CFH)

CIVIL COMPLAINT
PURSUANT TO
TITLE VII OF THE
CIVIL RIGHTS ACT,
AS AMENDED

Plaintiff(s) demand(s) a trial by:  **X** JURY _____ COURT  (Select **only** one).

## JURISDICTION

1. Jurisdiction is conferred on this court pursuant to 42 U.S.C. § 2000e-5.

## PARTIES

2. Plaintiff: Ricardo Phipps

   Address: 18 Parmenter Avenue

   Troy, New York 12180

   Additional Plaintiffs may be added on a separate sheet of paper.

3. a. Defendant: Northern Rivers - Michael Donahue

   Official Position: Executive Program Director

   Address: 60 Academy Road

   Albany, New York 12208

b.    Defendant:    Linda Daley

Official Position:    Chief Officer of Humn Resources

Address:    60 Academy Road

Albany, NY 12208

_____

4.    This action is brought pursuant to:

_X_  Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.
§ 2000e *et seq.,* and the Civil Rights Act of 1991, for employment discrimination
based on race, color, religion, sex or national origin.

_____  Pregnancy Discrimination Act of 1978, codified at 42 U.S.C. § 2000e(k), as
amended, Civil Rights Act of 1964, and the Civil Rights Act of 1991, for
employment discrimination based on pregnancy.

5.    Venue is invoked pursuant to 28 U.S.C. s 1391.

6.    Defendant's conduct is discriminatory with respect to the following (check all that apply):

(A)    _X_    My race or color.
(B)    ____    My religion.
(C)    _X_    My sex (or sexual harassment).
(D)    ____    My national origin.
(E)    ____    My pregnancy.
(F)    ____    Other: _____.

7.    The conduct complained of in this action involves:

(A)    ____    Failure to employ.
(B)    _X_    Termination of employment.
(C)    ____    Failure to promote.
(D)    _X_    Unequal terms and conditions of employment.
(E)    ____    Reduction in wages.
(F)    _X_    Retaliation.
(G)    ____    Other acts as specified below:

_____

_____

a.   Defendant:          Kimberly Cummins

Official Position:   Chief Officer of Residential Services

Address:             60 Academy Road

                     Albany, New York 12208

b.   Defendant:          Vernice Walker

Official Position:   Supervisor

Address:             60 Academy Road

                     Albany, New York 12208

a.   Defendant:          Jessica Mitchell

Official Position:   Clinician

Address:             60 Academy Road

                     Albany, New York 12208

b.   Defendant:

Official Position:

Address:

8.                     FACTS (See Attached Exhibits A.- G. to support facts)

Set forth the facts of your case which substantiate your claims.  List the events in the order they happened, naming defendants involved, dates and places.

**Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint.** (You may use additional sheets as necessary).

February 2019- Reported staff incident to Mr. Donahue / Ms. Cummins immediately. Mr. Donahue inaccurately stated on my July evaluation that he was not aware of the incident.

July 2019- Received my evaluation from Mr. Donahue, met with him to discuss, I then contacted Human Resources (Linda Daley) to express my concerns of unfair treatment by Mr. Donahue and schedule a meeting to address and discuss.

October 2019- Received a Disciplinary Write up from Mr. Donahue, following my request for my remaining pay-salary increase. I followed up with this request following my conversation with Kim Cummins, who originally had initiated this conversation with me the year prior.

November 2019- Met with Ms. Cummins again to express my concerns with Mr. Donahue, then met with Ms. Daley a day later following speaking with Ms. Cummins.

November 15, 2019- Placed on Administrative leave.  November 26, 2019- Terminated from Agency.

9.                     **CAUSES OF ACTION**

**Note: You must clearly state each cause of action you assert in this lawsuit.**

**FIRST CAUSE OF ACTION**

Unfair treatment and discrimination due to my race & gender as an African-American Male, and the only African-American Male Director in the organization during my time on Employment with Northern Rivers. There was a lack of empathy or understanding for explaining my personal, cultural or professional belief. No cultural sensitivity or diversity understanding by the Administration of this agency, which resulted in favoritism and attenuation of less favored staff.

Facts (Continued- See attached Exhibits# 1-6.)

8A.

- March 2020- Spoke with Staff Robert Ward, advised me that both he and Staff Diana Avery were forced by Supervisor Vernice Walker to make a false report to my Supervisor at the time Mr. Donahue, advising that I was neither competent nor effective at my role as a Director of the program. (Exhibit 1.)

- November 2019- Letter from Clinician Jessica Mitchell to Chief Officer Kimberley Cummins- This appears to be a follow up to a prior conversation in which Ms. Mitchell clearly expresses her desire to earn more money in addition to growth opportunities within the organization.  As Ms. Mitchell's direct Supervisor I should have been made aware of this conversation and she should have been redirected to me if these were her concerns.  I was responsible for hiring Ms. Mitchell in her current role at the time.  (Exhibit 2.)

- November 2019- There were several emails between Senior Administrators (Mr. Donahue, Ms. Cummins, and Ms. Daley) regarding events that involved Ms. Mitchell.

  There appears to be an overwhelming show of care and support for here needs to be addressed, heard and resolved.  There were concerns that I had made regarding Ms. Mitchell's progress and work abilities, however they were neither acknowledged nor ever addressed.  This was initially brought to the attention of Mr. Donahue during one of our meetings back in August, then again in October. They were also brought to the attention of Ms. Linda Daley and Ms. Kimberly Cummins in October 2019.  (Exhibit's 3-6.)

- As a result of the incidents that had taken place, ultimately Ms. Mitchell was never held accountable for any of her interactions, whereas myself as the Program Director was ultimately terminated from the agency for my actions, even after initiating on attempts to resolve any work related differences or discrepancies prior to any disciplinary action being taken against me.  These actions were all following conversations as early as July 2019, through October 2019 with 3 of the Highest Administrator's in the organization (Ms. Cummins- Chief Officer of Residential Services; Ms. Daley- Chief Officer of Human Resources & Mr. Donahue- Executive Program Director) who I believed were also in place to protect my best interest as a fellow Administrator, Agency employee and member of a protected class.


*Additional documentation is available and ready as/if needed *

Re: Ricardo Phipps v. Northern Rivers Family Services, Inc.
Case No. 10205016

On Mon, Mar 16, 2020, 10:19 AM rphipps@nycap.rr.com <rphipps@nycap.rr.com> wrote:
Thanks Mr. Bob,

Can you recall if it was before or during the time I was placed on leave? Trying to pinpoint the timeframe.

------ Original message------
**From:** Robert Ward
**Date:** Mon, Mar 16, 2020 9:01 AM
**To:** rphipps@nycap.rr.com;
**Cc:**
**Subject:** Re: Incident

I would if I could remember correctly. I honestly don't remember the exact date or day of the incident.

On Thu, Mar 12, 2020, 1:39 PM rphipps@nycap.rr.com <rphipps@nycap.rr.com> wrote:
Mr. Bob,

Can you revise this to include the date and day when this took place?

Thanks

------ Original message------
**From:** Robert Ward
**Date:** Thu, Mar 12, 2020 11:40 AM
**To:** rphipps@nycap.rr.com;
**Cc:**
**Subject:**Re: Incident

If you could leave my name out of any public record unless absolutely necessary I would appreciate it.

On Thu, Mar 12, 2020 at 11:38 AM Robert Ward <rward122585@gmail.com> wrote:

Hey Ricardo, I hope this is enough information.

I am writing this as a statement of fact. While working under Ricardo Phipps, one of my Team Leads, Vernice Walker pulled me into her office and stated that "this man doesn't know what he's doing" (referring to Ricardo). She then told me she wanted me and one of my coworkers to go talk to Ricardo's superior Mike Donahue about him. I had no desire do that and I didn't until weeks later when my coworker Diana exited Vernice's office and said that she was sending us down to speak to Mike about Ricardo. Vernice then popped her head out of her office and motioned for me to go with Diana. Regretfully, I complied to this request feeling pressured by my superior. I did however stress to Mike Donahue that these complaints (apart from one) were not my own and that I was simply the messenger.

Re: Ricardo Phipps v. Northern Rivers Family Services, Inc.
Case No. 10205016

11.5.19
Email from Ms. Cummins to Mr. Donahue

**From:** Cummins, Kim
**Sent:** Tuesday, November 5, 2019 6:00 PM
**To:** Donahue, Mike
**Subject:** Fwd: Follow Up

FYI

Sent from my iPhone

Begin forwarded message:

**From:** "Mitchell, Jessica" <Jessica.Mitchell@northernrivers.org>
**Date:** November 5, 2019 at 5:25:47 PM EST
**To:** "Cummins, Kim" <Kim.Cummins@northernrivers.org>
**Subject: Follow Up**

Hello Kim,

I hope your week has been off to a good start. I wanted to take a moment to check in and say Thank you for your unconditional positive regard that you provided last week. I also wanted to let you know that I applied for a position within the agency today, just exploring my options. I did make my direct supervisor aware of this as best practice, and as If I was in a supervisory directive role I would like my staff to do the same. As I have expressed many times, my loyalty is to Northern Rivers (Northeast ) and loyalty means a lot to me. I will continue to look for opportunities for growth and I'm open to feedback onto how and what I need to do in order to meet the financial needs to support my daughter. I just wanted to keep you in the loop and hopefully we can meet real soon (maybe for even a cup of coffee or tea).

**Thank You**

See attached email above from Ms. Mitchell to Ms. Cummins (Chief Officer or Residential Services).

At this point Ms. Mitchell has already established a relationship with Mr. Donahue that has diminished my authority that I had with her as one of my staff. Now she's working on improving her relationship with Ms. Cummins, to help secure that she gets the outcome she's looking for!

Ms. Mitchell clearly expresses her loyalty to the agency, and her desire to secure a new position when available. Is it professionally appropriate to ask her Boss to meet up for a cup of coffee or tea?

During these times, there were clearly several conversations that had taken place between Mr. Donahue, Ms. Mitchell and Ms. Cummins, none of which was brought to my attention at the time.

83

Re: Ricardo Phipps v. Northern Rivers Family Services, Inc.
Case No. 10205016

**Exhibit X.**
**3.28.2020**
**Email from Ms. Cummins to Ms. Daniels** *(original email sent 11.06.19 from Mr.*
*Donahue to Ms. Cummins)*

**From:** Donahue, Mike <Mike.Donahue@northernrivers.org>
**Sent:** Wednesday, November 6, 2019 9:06 PM
**To:** Cummins, Kim <Kim.Cummins@northernrivers.org>
**Subject:** RE: Notes from Jessica Mitchell

I'll meet with him Friday about all of this. It's good that Jessica wants to take tomorrow / Thursday off.
Either I or someone I choose will be in the feam meetings. I am going to directly deal with Ricardo about his
authoritarian approach to staff, as well as his approach with Jessica today and in general.
Thanks.

Sent from my Verizon Wireless 4G LTE smartphone

Mr. Donahue and I did not meet on 11.8.19 as stated; he actually met with me for the first
time about this on 11.12.19, that's when I was informed about Ms. Mitchell's potential
plan to return to the RTA team.

11.6.19
Email from Ms. Cummins to Mr. Donahue

-------- Original message --------
From: "Cummins, Kim" <Kim.Cummins@northernrivers.org>
Date: 11/06/2019 4:41 PM (GMT-05:00)
To: "Donahue, Mike" <Mike.Donahue@northernrivers.org>
Subject: Re: Notes from Jessica Mitchell

Thanks Mike
I talked to Linda and Molly about it
I'm most concerned about Jessica tomorrow
In terms of Ricardo two things we all agreed on
1) you need to supervise him about these concerns and take notes and possibly add them to the development
plan
2) I think someone has to be in his team meetings - maybe we should think about the theme and messaging for
his team meeting next week

Sent from my iPhone

Exhibit 4.

Re: Ricardo Phipps v. Northern Rivers Family Services, Inc.
Case No. 10205016

11.6.19
Email from Mr. Donahue regarding Ms. Mitchell's Incident

On Nov 6, 2019, at 4:27 PM, Donahue, Mike <Mike.Donahue@northernrivers.org> wrote:

Notes regarding Jessica Mitchell incident with Ricardo Phipps.

We held an all staff meeting this afternoon at Northeast. Many issues came up. We spoke about budget, hiring, the Listening Tour, being respectful at the Listening Tours by asking questions of the appropriate people at the appropriate time (as opposed to asking the CEO questions during the

85

Re: Ricardo Phipps v. Northern Rivers Family Services, Inc.
Case No. 10205016

Listening Tour when those questions were strictly program related). Several remarks were made about the schism between RTA and RTC staff. The overwhelming number of them fell on how we all must work together and we need to get past any feelings that we are different between each other and work toward our goals and the goals of the kids and families. Overall, the meeting seemed to go well. We tackled difficult issues and came up with ideas and conclusions together.

I was just finishing up the all staff meeting this afternoon and talking to several staff at a front table of the cafeteria when Jessica Mitchell came up to me in tears and put her badge on the table and said she was resigning effective immediately. She was in tears. She left the room. I finished closing up conversations with staff around me and went to the hallway outside the cafeteria. Corrine Dixon (Zoller Team Leader) and Shawanna Cole (New Directions assistant supervisor) were in the hallway and asked that I come speak with Jessica, who was in the gym. She was seated on the bleachers in the gym crying with NaTasha House (New Directions Team Leader) with her and comforting her. She said things like, she just can't do this anymore and referred to Ricardo not treating her with respect. He apparently chastised her at her table after she made a comment thanking the entire staff group for allowing RTA staff to learn from them by shadowing them and for being friendly, to her in particular, every day. She said to me, "I am good at my job but I am not respected by him." I then suggested going out for a walk to talk. Corinne and Shawanna came with us. Both of them were comforting Jessica. Shawanna noted that Ricardo doesn't want anyone in the RTA group to talk in the all staff meetings. She feels it is he who is keeping the groups apart (RTC and RTA). As we walked, we met up with Wilfredo and Dawn Roscoe (two well-known RTC staff). They also comforted Jessica and all agreed that everyone needs to work together and we all have to get along together. Shawanna was asking if I could come to their team meeting happening now. She said she was afraid of what Ricardo might say to the group of people there about the all staff meeting and a few of them talking at that meeting, especially after what he said to Jessica.

As we walked around and into the building, I asked Shawanna if this issue is what she had wanted to speak with me about. She had e-mailed last week asking to talk to me. I sent her some times to meet last week, but she didn't respond. I saw her in the kitchen this morning and asked if she still wanted to speak with me, but she said no, she had spoken with Ricardo). Shawanna said that, yes, this was the issue she wanted to speak with me about.

I walked Jessica up to my office and met Erin Pinchbeck there. I asked Erin to spend time talking with Jessica and, when she was ready, she could go home. I told her that she did not have to return to the dorm. I then went to the ND staff meeting. As I was at the meeting, Erin came to the dorm door and asked for NaTasha and then they went to Jessica's office presumably to get her belongings so she would not have to go onto the dorm. The team meeting was uneventful except for a few staff noting (when asked to check in per the ARC model about what their feelings were) that they felt confused or somehow out of sorts after the all staff meeting. I checked in with Samara Harris (the New Direction after care worker) after the team meeting and talked a bit about the case they have. Then I asked her how she was doing. She said she felt confused about all that is going on on the dorm.

About an hour later, NaTasha came to see me again and showed me a text message that Ricardo had sent to Shawanna that Shawanna had sent to NaTashsa. The text message said that Shawanna needed to make sure any questions raised at her table at the all staff meeting were "appropriate." NaTasha said Shawanna did not know how she could police the questions her staff might ask before they are asked. See Erin Pinchbeck's note below about her time with Jessica after I left the two of them together. I had also asked Corinne to write up what she saw as well (she was seated at the table with Jessica when Ricardo came up to her).

Re: Ricardo Phipps v. Northern Rivers Family Services, Inc.
Case No. 10205016

11.6.19
Email from Ms. Pinchbeck to Mr. Donahue

**From:** Pinchbeck, Erin
**Sent:** Wednesday, November 6, 2019 1:47 PM
**To:** Donahue, Mike
**Subject:** Notes from Jessica Mitchell

Jessica Mitchell in all staff meeting made a statement saying
- Thank you and acknowledging the RTC staff for allowing RTA staff to shadow and train them. Also for always being positive with staff and kids and saying good morning and a smile on their face etc.
She stated she was doing this just to acknowledge the divide and make peace in the building

-Ricardo then came over to the table and said you know Jessica that was stupid for you to say that you don't have to say sorry or thank anyone for being here. (She reports he did that yelling and slamming his hand on the table)
- She then said can we talk about this another time when the meeting is over.
-Ricardo  then walked away and cursed.

Natasha and Corinne were witness to this.

Jessica is very upset and was considering resigning- she knows that resigning would not be good for her career or the youth we serve- so is not resigning. She states she loves the job but the not the environment that she has to work in.


Thanks


In response to Ms. Pinchbecks email above, her statement is inaccurate.  What I said to Ms. Mitchell was along the lines of "we have no need to thank anyone; we have a just as much right to be here as anyone else does.  Please do not speak for the rest of your team! I did not slam my hand on the table; and I did not say that "that was stupid for you to say".  I absolutely did not curse in any shape or form; following my comment I did walk away after I made my statement, as I was headed back to my office upstairs.

Ms. Pinchbeck was not a witness to this event; she's only reporting what she has been told by staff.  For clarification on what I stated, you can certainly speak with Ms. Nicole Madlin, Ms. Jodi Rogers and Ms. Samara Miller (they were also seated at the table).

## SECOND CAUSE OF ACTION

Retaliation which ultimately led to my termination.
Following complaints made by myself to the Director/Chief
of the organizations Human Resource Department, and also
to the Chief Officer of Residential Services.
* Chief Human Resources· Linda Daley, Chief Residential Services- Kimberly Cummins

## THIRD CAUSE OF ACTION

Slander and defamation of Character by Administrators and staff
of the organization.

10. I filed charges with the New York State Division on Human Rights, the New York City
Commission on Human Rights or Equal Employment Opportunity Commission regarding
the alleged discriminatory acts on or about:

12.16.2019

(Provide Date)

11. The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter
(**copy attached**) which was received by me on or about:

June 15th, 2021

(Provide Date)

12. The plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

13. The defendant(s) is (are) an employer, employment agency, or labor organization within
the meaning of 42 U.S.C. § 2000e(b), (c), or (d).

14. The defendant(s) is (are) engaged in commerce within the meaning of 42 U.S.C.
§ 2000e(g).

15.  **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff(s) request(s) that this Court grant the following relief:

I am seeking compensation for each said cause of action against me in the amount of $500,000 for each. Due to the violation of my Constitutional Rights and a member of a protected class in the workplace. Also, any other relief that the courts seems necessary.

I declare under penalty of perjury that the foregoing is true and correct.

SEP 20 2021

DATED: _____

_____

_____

Signature of Plaintiff(s)
(all Plaintiffs must sign)

02/2010

Exhibit A.

Re: Ricardo Phipps v. Northern Rivers Family Services, Inc.
Case No. 10205016

Mr. Donahue would often tell me "You know Ricardo as a new Director I had to learn, I made mistakes also, and it takes time to learn". "It's very different being a Director from a supervisor position".

*In actuality the hardest thing for me personally while being a "Director " was not getting support from the upper management team that I dedicated my time and work loyalty to, in addition to Mr. Donahue repeatedly trying to instill in me how hard it is to be a "Director".

If my "mistakes' were similar to those that they made themselves, why am I out of a job? And why was this done in such a vicious manner?

*The 1st major instance of differences between Mr. Donahue and me was back in February 2019. This involved the reporting of an incident in which a New Directions Supervisor was involved in an off work sexual accusation involving Mr. Adrian O'Neale (former Team Leader) and Ms. Monique Carpenter (former Residential Counselor). On my evaluation done by Mr. Donahue in July/August 2019 Mr. Donahue accused me on not accurately reporting this incident because he could not accurately recall the events on the day of 2.9.19. Instead he fabricated what he believed to be truth of what he recalled from this day. This was the 1st time that I was presented with Mr. Donahue's tactics. If there were any doubts in what he was able to recall, he simply could have asked me. On that day I had already wrote case notes on my meeting with Ms. Carpenter, prior to the request from Human Resources so that I could recall the sequence of events.

Ms. Walker (Team Leader), Ms. Carpenter (former RC) and Mr. Michael Johnson (former RC) can confirm and verify the accuracy of my statement regarding this incident. In a period of July/August 2019 when I received my 1st and only evaluation, through November 2019, I was evaluated and terminated within this timeframe (4 months).

➢ 10.26.16 Hired at Northern Rivers as Program Coordinator

➢ 10.26.16 through August. 2018

- ❖ No negative reports
- ❖ No complaints
- ❖ No accusations
- ❖ No allegations
- ❖ No write-ups
- ❖ No problems reported
- ❖ No concerns reported
- ❖ Recipient of Leadership Award nominated by peers
- ❖ Nominated for agencies Safety Committee
- ❖ Nominated for agencies holiday gift giving drive committee
- ❖ Nominated for team building event planning committee
- ❖ No sick days off from work

105

Re: Ricardo Phipps v. Northern Rivers Family Services, Inc.
Case No. 10205016

> ➢ August 2018 Promotion to hired as the Director of New Directions program

> ➢ August 2018 through 06.2019

> > ❖ No regular scheduled supervision
> > ❖ No feedback from Supervisor
> > ❖ No write ups
> > ❖ No problems reported
> > ❖ No concerns reported
> > ❖ No sick days off from work
> > ❖ Still no job description supplied

> ➢ 7.1.19 performance evaluation received

> ➢ 7.15.19 received 30 day development plan (this was not revised, nor was this revisited upon the 30 day mark of 8.15.19 or anytime thereafter)

> ➢ 7.16.19 revised performance evaluation received

> ➢ 10.28.19 received a PDN as a written warning for sending out several emails late. (Not training or supervision note, or a verbal warning, but a written warning).

> ➢ 11.15.19 placed on administrative leave without pay

> ➢ 11.21.19 met with Mr. Rondeau regarding internal investigation

> ➢ 11.26.19 terminated from Northern Rivers

> ➢ At no time during any of these events after multiple requests, I still was not provided with a copy of my job description

106

Exhibit C.

NYS Division of Human Rights
1 Empire State Plaza
Albany, NY 12220
Attn: Ms. Cecilia Hassett
Re: Summation
Case No. 10205016

September 2, 2020

Good Morning Ms. Hassett,

Here is my summation from our telephone meeting with Northern Rivers on 8.26.2020, I appreciate your time and attention to this matter to investigate my concerns as stated. I would like to express that I have shared the truth during these events as they took place, as I have previously reported to the Northern Rivers Sr. Administrative Staff, with minimal feedback or resolution.

During our call I was able to reiterate how and why I felt I have been discriminated against based on my sex and race as an African American Male within this organization at the time. As mentioned previously, partially due to a higher level of scrutiny for me as indicated by Ms. Cummins during our call, I feel that I was unjustifiably terminated from this organization.

I have several current employee Northern Rivers staff that are available and willing to speak on my behalf, regarding some of the treatments and circumstances they have witnesses that I had to encounter as the only African American Male Director within this organization. Their fear is for retaliation against them by the organization for them speaking on my behalf.

During our call on 8.26.2020, I spoke truthfully as I reiterated several situations in which I have expressed concerns regarding how I have been unfairly treated by Sr. Administrative staff. These same concerns were shared with Mr. Mike Donahue in person on 7.1.19, and for the 2nd time in the presence of Ms. Linda Daley during my requested meeting with Human Resources on 7.16.19 as a follow-up to discuss concerns regarding my evaluation.

On 11.7.19 via phone I requested to meet with Ms. Daley, she suggested we meet on 11.8.19 at her office which we did. Once again I expressed my concerns regarding my challenges with Mr. Donahue, and also inquired about my status and protections as the only African American Male Director in the organization at that time, in which Ms. Daley assured me "I was fine, and had nothing to worry about". I was terminated from the organization 18 days later.

Here are some of the specific inconsistencies that I would like to have further investigated, as I found some of the statements from Northern Rivers, false, inaccurate as it happened, contradictory to the facts and unclear.

Exhibit D.

Ms. Cummins (*Please see email from Ms. Cummins Ex. AF p.37-38)

- You asked if I brought up any concerns to her attention in November 2019 or around that time? She acknowledged yes, that there were several things happening that she was aware of, including concerns of favoritism to female staff (including Ms. Jessica Mitchell), and acknowledged challenges with Supervisor Mr. Donahue

- You asked if I brought up issues about sex or race, she indicated "Not at that time, no".

- You asked if I brought to her attention that I was being treated different by Mr. Donahue, she responded "No"

- You asked was there a time when I brought up race/sex to Ms. Cummins and she indicated "Yes, November of the previous year "2018" following a conversation about the term 'Young Lady".

- Ms. Cummins acknowledged that I was being held to a higher level of scrutiny, and also that I was the only African American Male Director in the agency at the time

- Ms. Cummins stated that I did not state to her that I was the only African American Male Director, however she did confirm this to be a factual statement

- Ms. Cummins referenced multiple occasions on which I used "young lady" to introduce her to my staff again, and also referred to other peers as "young ladies". There was one instance/ event which was during the open house when this comment was made regarding Ms. Cummins and only her. She mentioned that she pulled me aside to address her concern (which we did) and this issue never came up again

- Ms. Cummins stated that the final reason for my termination was due to not maintaining "health and safety" for the program. She also referenced agency policy and procedures, and spoke about a youth you possibly had substance, but they didn't know for a fact" *because no one asked me, as the Program Director I should have been the 1ˢᵗ person Mr. Donahue reached out to for clarification*.

  I had an active role in writing the policies and procedures for the program, so I was well aware of what they were, and protocols that should have taken place in the event of a situation like this.

  The facts of this matter is that I was not asked about the situation when it occurred, I was only asked about it after a lengthy internal investigation that could have been prevented if my Supervisor Mr. Donahue reached me in the moment to address this concern, and simply ask me to clarify the circumstances of events.

  I was held responsible/liable for a situation that initiated with the Security Dept. and their team that Mr. Donahue was also responsible for, but did not hold them liable or responsible for their lack of actions regarding the safety and security of the sole youth in the program at the time.

- You asked about the incident involved Ms. Fuscus in July/August 2019; Ms. Cummins appeared to not be familiar with it; however she was able to clearly clarify how the programs were different in addition to Ms. Fuscus's level of responsibilities as a Director overseeing a program involving youth. Ms. Cummins made it clear that the defunct program was not a 24 hr. residential program so responsibilities were different and there may have not been any health and safety concerns, although an entire team/department had to be removed and reassigned

- Ms. Cummins stated that residential care programs have a higher level of scrutiny due to the safety of youth 24 hrs/day. In 2014 when the youth referred to as RW had been abused at the RTC location in Schenectady NY, Ms. Fuscus was the current Director of Residential Services at that time (2009-2018). The agency ultimately settled the lawsuit for founded abuse of this youth, as there were several safety concerns violations which resulted in the harm of a child in care within a 24 hr/day facility. Ms. Fuscus was not held liable or responsible for her actions or lack thereof in her role at the time. She was ultimately transferred to another department with a title change, and less responsibilities but still no accountability or scrutiny against her.

- You asked Ms. Cummins if Mr. Donahue favors some people over others and she replied "no". Regarding Ms. Huble, Ms. Cummins stated that she was appointed as "an interim" Director. Ms. Huble was not involved into the RTA program/process until September 2019 when Mr. Donahue states in his 3.31.2020 email to Ms. Daniels (Exhibit L. p12) "I had to bring Carisa into this to help…."?

  Prior to this moment, Ms. Huble have not attended any RTA meetings or conferences, and she was not a part of the treatment team **until** Mr. Donahue appointed her into a program and a role that she had no familiarity with. I had other RTA staff (Ms. Nicole Madlin and Ms. Samara Miller) that has worked with me to establish this program from the inception in 2018, including attending all county/state meetings, marketing etc. They were not only qualified and knowledgeable enough to run the program, they were overlooked and bypassed due to Ms. Huble's appointment by Mr. Donahue (another example of his implicit favoritism).

  Ref. Section D.  Claim of Discrimination on the Basis of age and race (4.8.2020) Ms. Daniels confidentially expressed that my former role was backfilled with an African American Male which was inaccurate. There was no mention of conflicts filling my former role until I brought it to the attention of DHR in my 6.1.2020 rebuttal.

  Several months later on 8.26.2020, Ms. Cummins expressed that this same candidate did not take the role due to a low salary; however the same candidate just began a new positon within the last 2 weeks at the Albany local as an Executive Program Director (4 months after DHR was advised that my former role had been filled by an African American Male).

  Finally regarding Ms. Huble, she could not maintain the title of Program Director due to her lack of supervisory experience in addition to not meeting the educational requirement for this role. In order to accommodate this new role the title was changed to suit her qualifications. I was left unsure if the agencies position was to hire a replacement qualified candidate to backfill the open role (Which Ms. Huble was not), or to hire another African American Male to satisfy status quota?

- You asked Ms. Cummins about my evaluation and whether or not mine seemed harsher in comparison to other staff he supervises? She replied "no". She also stated that she reviews any evaluations that Mr. Donahue has to write for his staff. I was hired to this program August 2018; I did not receive a 6 month performance review. Several months later in July 2019 I received my 1st and only review with feedback, which was almost an entire year into my Director without any significant concerns or feedback on my work in my role

Ms. Linda Daley (*Please see self-note from Ms. Daley Ex. AG p.39-40)

- You asked Ms. Daley did I bring complaints about discrimination in the workplace and she said "No, he brought complaints about my performance review". This statement is inaccurate and incorrect. When I reached Ms. Daley back in early July 2019 to request a meeting with Mr. Donahue and her, the purpose of that meeting was to discuss my performance review (which we did back in July 2019). Once I turned in my revised evaluation with my own feedback, this had been resolved in my opinion. My 7.18.19 email to Mr. Donahue and Ms. Daley (Exhibit K. p2) thanks them for our in person meeting to review my evaluation, in addition to requesting my job description again which was never received. When I provided my final feedback on 9.11.19 (as shown on RP. Exhibit N. p45), I had moved past this process and continued to focus on my duties still without having a job description

- Ms. Daley was highlighting some points from our conversation back in July 2019, not November 2019. When I met with Ms. Daley on 11.8.19 I met with her to specifically express my concerns regarding Mr. Donahue's actions and treatment towards me in the workplace, and inform her of the situation with Ms. Jessica Mitchell that had taken place on 11.7.19 as I was bothered by it. She appeared to intentionally redirect my conversation, and would later inaccurately report what was discussed during our meeting

- There was never any mention about any problems with Ms. Morocco or any recommendation to meet with the Chief of Quality because there were no issues brought to my attention at that time. It would have been extremely unlikely that I would request a meeting with Ms. Daley, so that she could turn the topic away from my expressed concerns to then discuss my Morocco and issues with other departments. Ms. Daley also stated that I mentioned not having a job description (which was still correct) and that Mr. Donahue would be getting one to me. *There is no record in my file, or via email that Mr. Donahue ever gave or emailed me a copy of my job description that I requested several times. Ms. Daley's self-note of our meeting on 11.8.19 (Exhibit AG p.39-40) somewhat describes some of my concerns from my July 2019 meeting with her and Mr. Donahue, which is completely different from my self-note of the same meeting that I requested on 11.8.19

  As I mentioned previously, our two summaries are completely different as Ms. Daley clearly mixed up the 2 different meeting dates, and did not accurately recall anything that we spoke of during our meeting (Rebuttal form June 2020 p.108).

- You asked Ms. Daley did I express to her that I was being treated differently than other individuals, she replied "um no". She also stated that "I didn't give her anything of that nature". In my 11.12.19 email to both Ms. Daley and Ms. Cummins (Exhibit AH p. 41-44), my first few lines of my email state 'Evening Linda, I wanted to follow upon our conversation last week. You asked me to send you some of favoritism examples happening within the office and within my team…" This was a direct request from my meeting with Ms. Daley the week prior on 11.8.19. There was no reference to this conversation reflected in Ms. Daley's self-note. Ms. Cummins did acknowledge and respond to this email, so they were advised again of my concerns. Ms. Daley did not respond to my email message

- You asked Ms. Daley if she recalled mentioning that I was the only African American Male Director in the agency, she stated "no". See Rebuttal form June 2020 p.108 **(Linda asked me to send her examples; I told her I don't want to ruffle feathers I just want to be allowed to work, I told her I would think about it).**

  I then asked Linda, As an African American Male Director in the workplace what protections do I have in place? Linda expressed how I was good at what I do, I know my program and no one is looking to get rid of me. *I also asked Linda was it legitimate for me to be denied a raise as a result of a pdn? She responded that my time is terrible asking for a raise while receiving a pdn....
  I advised her that my request for my raise was about a month before receiving a pdn, and Mike D never discussed this again until I asked during our supervision.

  I mentioned to Linda that staff at the rtc had been talking to me inquiring about whether or not we'll have any groups or committees on diversity. The concern from the rtc is that there isn't a lot of minority representation in management, so they would like an opportunity to express themselves and be heard also. I believe Linda said that there was an advisory board existing or either in the works. I let her know that I would really like to be involved.

- You asked Ms. Daley did she have a role in the termination process. She stated that the final decision was made by Ms. Cummins, Mr. Donahue and herself

  Ms. Cummins had previously stated that the decision for termination was made by Ms. Daley, Mr. Donahue, Mr. Gettman, Ms. LaFrenier and herself. This is inconsistent with what Ms. Daley had stated/ reported.

- Finally (Exhibit AF p.37-38 email from Ms. Cummins to Mr. Donahue and Ms. Daley on 11.7.19 at 4:44pm)

  Following my 10 minute meeting with Ms. Cummins she drafted this email to both Mr. Donahue and Ms. Daley advising them of my specific concerns, which she acknowledged at the time. This was the day before I met with Ms. Daley. It's my belief that Ms. Daley was already aware of my concerns prior to my arrival on the morning of 11.8.19 for our meeting. These are the same concerns that Ms. Daley had stated during our phone conference that she was not aware of.

  Ms. Daley and I met from 11:28am until 12:25pm, during this time I expressed the exact same concerns I spoke with Ms. Cummins about on 11.7.19 with the addition of specifically asking her about protections in the workplace for me as the only African American Male Director in the agency at the time. With the knowledge that Ms. Daley received from Ms. Cummins the previous evening regarding my concerns already, it would appear that my conversation was intentionally redirected on content that we did not discuss as Ms. Daley stated. When Ms. Daley wrote her note following our meeting, she reflected on the conversation that we had back in July 2019 and again did not acknowledge or accurately report the content of what we just discussed. The only accurate recollection of our 11.8.19 conversation was the fact that we met at 11:30am at my request.

  It would appear unlikely that Ms. Daley was able to recall specifics discussed during our July 2019 meeting, but failed to accurately capture and describe a face to face meeting that we just finished prior to writing her self-note. In addition to already being aware of my meetings subject and content, as previously advised the prior evening by her peer Ms. Cummins.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | **Ricardo Phipps**<br>**P.O Box 6033**<br>**Albany, NY 12206** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2020-00732** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(929) 506-5316** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

June 15, 2021

**Judy A. Keenan,**
**District Director**

*(Date Issued)*

Enclosures(s)

cc: **Attn: Director of Human Resources**
**NORTHERN RIVERS FAMILY SERVICES, INC**
**60 Academy Rd.**
**Albany, NY 12208**