**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RICARDO PHIPPS,

                         Plaintiff,

            v.                                          1:21-CV-1036
                                                        (BKS/CFH)
NORTHERN RIVERS, et al.

                         Defendants.

_____

**APPEARANCES:**

Ricardo Phipps
18 Parameter Avenue
Troy, New York 12180
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**UNITED STATES MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION & ORDER

### I.  In Forma Pauperis

Plaintiff pro se Ricardo Phipps purported to commence this action on September 20, 2021, with the filing of a complaint and, in lieu of paying this Court's filing fee, a motion for leave to proceed in forma pauperis.  See Dkt. No. 1 ("Compl."), 2.  After reviewing plaintiff's IFP application, the Court concludes that plaintiff financially qualifies to proceed IFP for the purpose of filing only.  Plaintiff is advised that, despite being granted IFP status for the purposes of filing in this case, he is still required to pay any fees or costs he may incur in this case.

### II.  Initial Review

1

### A.  Legal Standard

Section 1915(e)[1] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.  Where the plaintiff is proceeding pro se, the court must consider the claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.'"  Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).  A pro se litigant's pleadings are held to a less strict standard than those drafted by an attorney.  See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties.").  Because plaintiff is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." See Triestman v. Fed. Bureau of

---

[1] The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).  However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  See FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d).

Further, Rule 10 of the Federal Rules provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate

> transaction or occurrence – and each defense other than a denial – must
> be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of

identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189

F.R.D. at 54 (internal quotation marks and citations omitted).

> "In reviewing a complaint . . . the court must accept the material facts
> alleged in the complaint as true and construe all reasonable inferences in
> the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.
> 1994) (citation omitted). However, "the tenet that a court must accept as
> true all of the allegations contained in a complaint is inapplicable to legal
> conclusions. Threadbare recitals of the elements of a cause of action,
> supported by mere conclusory statements, do not suffice."

Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009). A court should not dismiss a complaint if

the plaintiff has stated "enough facts to state a claim to relief that is plausible on its

face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

U.S. at 678 (citation omitted).

   Allegations that "are so vague as to fail to give the defendants adequate notice of

the claims against them" are subject to dismissal.  Sheehy v. Brown, 335 F. App'x 102,

104 (2d Cir. 2009) (summary order).  Indeed, a complaint that fails to comply with these

pleading requirements "presents far too a heavy burden in terms of defendants' duty to

shape a comprehensive defense and provides no meaningful basis for the Court to

assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355

(N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply

with the requirement that it be short and plain, the court has the power, on its own

initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.

1988) (citations omitted).   However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).


## B.  Complaint

Plaintiff seeks to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 20003, et seq., and the Civil Rights Act of 1991 for employment discrimination based on his race and sex, against his former employer, Northern Rivers, and Northern Rivers employees Michael Donahue, Executive Program Director; Linda Daley, Chief Officer of Human Resources; Kimberly Cummins, Chief Officer of Residential Services; Vernice Walker, Supervisor; and Jessica Mitchell, Clinician.  See Compl. at 1-3.  Plaintiff alleges that he was subjected to "[u]nfair treatment due to my race & gender as an African-American Male, and the only African-American Male Director in the organization during my time on Employment with Northern Rivers." Id. at 4.  Plaintiff contends that there "was a lack of empathy or understanding for explaining my personal, cultural or professional beliefs.  No cultural sensitivity or diversity understanding by the Administration of this agency, which resulted in favoritism and alienation of less-favored staff." Id.

Plaintiff provides that he began his employment at Northern Rivers in October 2016 as a Program Coordinator.  See Compl. at 14.  From his hiring date to August 2018, plaintiff received no negative reports, complaints, write ups, or concerns about his performance.  See id.  Plaintiff was nominated for various awards and committees.  See id.  In August 2019, plaintiff was promoted to the Director of the New Directions

program.  See id. at 15.  From August 2019 to June 2019, plaintiff received no "write ups" or any reported problems or concerns, but also had "[n]o regular scheduled supervision," [n]o feedback from Supervisor" and no job description had been provided to him.  Id.  On July 1, 2019, plaintiff received a performance evaluation, which was revised on July 16, 2019.  Id.[2]  On October 28, 2019, plaintiff "received a PDN[3] as a written warning for sending out several emails late (Not training or supervision note, or a verbal warning, but a written warning)."  Id.  On November 15, 2019, plaintiff was placed on unpaid administrative leave.  See id.  On November 21, 2019, plaintiff "met with Mr. Rondeau regarding internal investigation," and on November 26, 2019, plaintiff was terminated.  Id.

Plaintiff provides that beginning in 2019, he had a "staff incident," which he immediately reported to Mr. Donahue and Ms. Cummins.  Compl. at 4.  The staff incident involved his reporting of an "off work sexual accusation," but in his July or August 2019 evaluation, which was his "1st and only evaluation through November 2019," "Mr. Donahue accused me of not accurately reporting this incident because he could not accurately recall the events on the day of 2.9.19" and "fabricated what he believed to be the truth of what he recalled from this day."  Id. at 14.  However, plaintiff alleges that three nonparty employees, Ms. Walker, Ms. Carpenter, and Mr. Michael Johnson "can confirm and verify the accuracy of my statement regarding this incident."  Id.  Plaintiff contacted Ms. Daley in Human Resources "to express my concerns of unfair treatment by Mr. Donahue and schedule a meeting to address and discuss."  Id.  In October 2019, plaintiff "[r]eceived a disciplinary write up from Dr. Donahue, following my

---

[2]  Plaintiff does not explain the contents of the performance evaluation or revised evaluation.
[3]  Plaintiff does not define "PDN" for the Court.

request for my remaining pay-salary increase." Id.  In November 2019, plaintiff "met with Ms. Cummins again to express my concerns with Mr. Donahue, then met with Ms. Daley a day later[.]" Id.  On November 15, 2019, plaintiff was placed in administrative leave, and on November 26, 2019, was terminated.  See id.

Plaintiff next refers to an incident involving an employee he supervised, Ms. Mitchell, apparently relating to her reaching out to supervisory staff seeking "opportunities for growth" and seeking a meeting, which plaintiff felt was not "professionally appropriate" and "diminished [my] authority that I had with her as one of my staff."  Compl. at 7.

Plaintiff alleges retaliation for making complaints to the director/chief of Human Resources, Ms. Daley, and to the Chief of Residential Services, Ms. Cummins.  See Compl. at 12.  Plaintiff further alleges "[s]lander and defamation of character by administrators and staff of the organization."  Id.  Checking off boxes on the form Title VII complaint, plaintiff contends that he was discriminated against through the termination of his employment, unequal terms and conditions of employment, and retaliation.  See id. at 2.  Plaintiff provides that he filed charges with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2019, and received an EEOC Notice-of-Right-to-Sue letter on June 15, 2021.[4]  See id. at 12, 21.  Plaintiff demands $500,000 for each of three causes of action, totaling $1,500,000, "[d]ue to the violation of my Constitutional Rights and a member of a protected class in the workplace."  Id. at 12.

---

[4]   The right to sue letter is dated June 15, 2021.  Plaintiff commenced this action on September 20, 2021, which is more than ninety days after the date of the right to sue letter.  However, it is not clear on what day plaintiff received the right to sue letter.

It appears that plaintiff alleges that he faced race and sex discrimination and retaliation relating, in part, to concerns he had and expressed about an employee under his supervision, Jessica Mitchell.  See Compl. at 5.  Plaintiff feels that there was "an overwhelming show of care and support for here [sic] needs to be addressed, heard and resolved," but that plaintiff's "concerns" about Ms. Mitchell's "progress and work abilities," which he raised to Mr. Donohue, Ms. Daley, and Ms. Cummins in August and October of 2019, "were neither acknowledged nor ever addressed."  Id.  Further, plaintiff provides that Ms. Mitchell "was never held accountable for any of her interactions," but he was terminated "even after initiating on attempts to resolve any work[-]related differences or discrepancies prior to any disciplinary action being taken against me."  Id.

Plaintiff further contends that supervisor Vernice Walker "forced" non-party Northern Rivers employees Robert Ward and Diana Avery "to make a false report to my Supervisor at the time Mr. Donahue, advising that I was neither competent nor effective at my role as a Director of the program."  Compl. at 5.  Plaintiff also attaches several exhibits to the complaint, made up of e-mails which plaintiff appears to seek to incorporate into his complaint by reference.  In these e-mails, it appears that it was alleged that, after Ms. Mitchell made a comment at a staff meeting, plaintiff yelled at Ms. Mitchell, told her that "it was stupid of her" to make the comment, slammed his hand on the table, and cursed.  See id. at 11.  Plaintiff disputed engaging in the alleged conduct and claimed that witnesses to the conversation exchange supported his version of events.  See id.

**D.  Initial Review**

8

Plaintiff appears to argue that he was discriminated against based on his race and gender insofar as he was terminated from his employment (1) after a supervisor falsely alleged that he failed to report an allegation of sexual misconduct involving a staff member, and (2) relating to concerns he had over an employee he supervised, Ms. Mitchell.  See generally Compl.  Plaintiff also appears to argue that he was treated differently than an employee he supervised insofar as her concerns were addressed and treated sympathetically, but his concerns over her performance were ignored.  See id.  Further, plaintiff appears to argue that his termination was disproportionate and in retaliation for his complaints to human resources and superiors as he was not offered any other form of intervention or feedback before his sudden termination, and he otherwise had no negative performance reviews or complaints.  See id.  Finally, he states that he was subject to a higher level of scrutiny due to his race and gender and status as the only African-American male director.  See id. at 16.

### 1. Section 1983 – Constitutional Claim

Insofar as plaintiff generally references unspecified violations of his constitutional rights, such claims must be dismissed.  It is well settled that "simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction" nor does "vague references to 'civil rights.'" Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (citation omitted).  Second, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  "Because the United States

Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).  Therefore, a private party may only be held liable under § 1983 as "a willing participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 1442 (1970) (quoting United States v. Price, 383 U.S. 787, 794 (1966)).

Plaintiff fails to name as defendants any state actors or allege that any of the private defendants were acting under the color of state law or conspired or collaborated with a state actor to deprive him of a constitutional right.  See Fries v. Barnes, 618 F.2d 988, 990 (2d Cir. 1980) (citing Adickes, 398 U.S. at 990).  Further, plaintiff fails to allege the violation of any right secured by the Constitution.  See West, 487 U.S. at 48. Accordingly, plaintiff has not stated a claim for violation of any constitutional right under 42 U.S.C. § 1983; therefore, to the extent that the complaint seeks to raise a claim for a violation of an unspecified constitutional right, this claim must be dismissed.

### 2.  Title VII

As a threshold issue, plaintiff cannot bring Title VII claims against the individual defendants in their official capacities.  "It is well-established that 'individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.'"  Bottge v. Suburban Propane, 77 F. Supp. 2d 310, 313 (N.D.N.Y. 1999) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995); see also Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) ("[I]ndividuals are not subject to liability

under Title VII.").  Accordingly, it is recommended that any claims against individual defendants Michael Donahue, Kimberly Cummins, Linda Daley, Vernice Walker, and Jessica Mitchell brought pursuant to Title VII be dismissed with prejudice.

### a. Discrimination

Under Title VII, "[i]t shall be an unlawful employment practice for an employer (1) to . . . discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1); Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998).  Sex discrimination claims under Title VII are analyzed under the three-step burden shifting scheme articulated by the Supreme Court in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802–05 (1973).  Under the McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. See id. at 802. "The requirements to establish a prima facie case are minimal, and a plaintiff's burden is therefore not onerous." Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012) (internal quotations and citations omitted). If the plaintiff establishes a prima facie case, there is a presumption that the employer unlawfully discriminated against the employee.

To demonstrate a claim for discrimination in violation of Title VII, a plaintiff must set forth nonconclusory allegations demonstrating that he (1) belongs to a protected class, (2) is qualified for the position at issue, (3) his employment was terminated or he suffered another form of adverse action, and (4) the adverse action occurred under

circumstances that give rise to an inference of discrimination.  See Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

Here, although plaintiff has demonstrated that (1) he belonged to a protected class, (2) was at least arguably qualified for his position, and (3) he was terminated, plaintiff's complaint does not suggest that this was done under circumstances giving rise to an inference of discrimination.  Insofar as plaintiff seeks to set forth a claim for discrimination under Title VII, plaintiff has failed to set forth a plausible link between the adverse actions he alleged he faced, termination, being denied pay increases, and being held under "higher scrutiny" to either his race or sex.  Compl. at 16.  Although plaintiff contends that he was retaliated for filing complaints with human resources or other supervisory staff, plaintiff does not demonstrate that he was retaliated against for complaining about race or sex discrimination.  Rather, he contends that he was retaliated against for complaining for receiving a "disciplinary write up" from his supervisor after making a "Request for my remaining pay-salary increase."  Id. at 4.  His complaint also alludes that he was terminated due to his supervisor falsely claiming that plaintiff had inaccurately reported an allegation of sexual misconduct by an employee. An e-mail attached to the complaint, which was sent after plaintiff was terminated from defendant Northern Rivers, appears to indicate that plaintiff expressed concerns that he was subjected to a "higher level of scrutiny" due to his sex and race.  Id. at 16. However, the e-mail does not suggest that he complained about being subjected to a higher level of scrutiny due to his race and sex and was terminated because of his complaint.

12

Further, insofar as plaintiff indicates, by checking the relevant box on his form complaint, that he was subjected to unequal terms and conditions of employment, the only suggestion of such a claim is plaintiff's statement that his concerns about a subordinate employee were not addressed, whereas the female subordinate[5] was given "an overwhelming show of care and support for here [sic] needs to be addressed, heard and resolved."  Compl. at 5.  Further, plaintiff generally states that he was subject to higher levels of scrutiny, but does not identify other, similarly-situated employees who were subjected to lesser scrutiny.  Id. at 16.  To establish a Title VII claim for unequal terms and conditions of employment, "plaintiff must show that there were other similarly situated employees, outside of the protected class, who engaged in conduct substantially similar to that of plaintiff but received preferential treatment."  Vanhorne v. New York City Transit Auth., 273 F.Supp.2d 209, 216 (E.D.N.Y.2003).  Thus,  plaintiff needs to make sufficient factual allegations to demonstrate that the unequal terms or conditions were due to his membership in a protected class to state a sufficient claim for race discrimination, as opposed to his position as a supervisor and the other employee's position as a subordinate, or another reason.  Indeed, as plaintiff was in a director role, it is unclear how plaintiff would be similarly-situated to Ms. Mitchell, a subordinate employee.  See, e.g., Baker v. Medical Answering Svcs., LLC, 5:18-CV-870 (BKS/ATB), 2019 WL 634654, at *3 (N.D.N.Y. Feb. 14, 2019) ("While an inference of discrimination may be drawn from a showing of disparate treatment—evidence that the Plaintiff was treated less favorably than similarly situated employees of different races— there are no such facts alleged here.") (citing Mandell v. County of Suffolk, 316 F.3d

---

[5] The employee's race is not specified.

368, 379 (2d Cir. 2003)) (emphasis added).  The statements in plaintiff's complaint are insufficient to demonstrate that any unequal terms and conditions of employment were due to his race or sex.  See, e.g., Arroyo-Horne v. City of New York, No. 16-CV-03857, 2018 WL 4259866, at *15 (E.D.N.Y. Sep. 5, 2018) (dismissing a claim where the "[p]laintiff fails to allege facts to support her claim that either alleged adverse employment action was discriminatory based on her race").

Accordingly, it is recommended that plaintiff's Title VII race and sex discrimination claims against Northern Rivers be dismissed without prejudice and with opportunity to amend to provide sufficient factual support as detailed herein.

### b.  Retaliation

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action."  Czerwinski v. New York State Dep't of Corr. & Cmty. Supervision, 394 F. Supp. 3d 210, 222-23 (N.D.N.Y. 2019) (quoting Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2d. Cir. 1998)).

> "To demonstrate participation in a protected activity, a plaintiff in a retaliation case need not prove that the conditions she protested amounted to an actual Title VII violation; she need only establish that she had a good faith, reasonable belief that a violation occurred." Hubbard v. Total Commc'ns, Inc., 347 F. App'x 679, 681 (2d Cir. 2009) (citing Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134 (2d Cir.1999)). However, "the plaintiff is 'required to have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII.'" Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001)).

14

Czerwinski, 394 F. Supp. 3d at 223.

Further, plaintiff generally states, without explanation, that Northern Rivers lacked "empathy or understanding" for his "personal, cultural or professional beliefs" and that there was a lack of "cultural sensitivity or diversity understanding by the Administration of the Agency, which resulted in favoritism and alienation of less favored staff," but plaintiff provides no details about a "lack of understanding" as it relates to his membership in a protected class.  Plaintiff makes no allegations that relate to "cultural insensitivity" or "diversity understanding," or explain how the apparent lack of cultural sensitivity or diversity understanding amounted to race or sex discrimination under Title VII.

Accordingly, it is recommended that plaintiff's Title VII retaliation claim against Northern Rivers be dismissed without prejudice and with opportunity to amend to provide sufficient factual support, as identified herein.

### 4.  Defamation

At the close of his complaint, plaintiff conclusorily states that he also seeks damages for "slander and defamation of character."  See Compl. at 12.  Plaintiff does not tie any facts into these allegations.  Reading the complaint liberally and to raise the strongest argument it could suggest, it is arguable that plaintiff is contending that the allegedly false allegations that plaintiff failed to timely or properly report an incident of sexual misconduct; the incident where it was alleged that he yelled at an employee, slapped a table, and cursed; or Ms. Walker's alleged action of forcing non-party employees "to make a false report to … Mr. Donahue, advising that I was neither

competent nor effective at my role as a Director of the program" amounts to slander. Compl. at 5.

Defamation is a state law claim, and slander is one form of defamation. "Under New York law, '[d]efamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.'" Kennedy v. City of New York, No. 12 CIV. 4166 KPF, 2015 WL 6442237, at *12 (S.D.N.Y. Oct. 23, 2015)[6] (quoting Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013)).  Under New York law, slander is defined as "'(1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) either causing special harm or constituting slander per se, and (7) not protected by privilege.'" O'Diah v. Yogo Oasis, 954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013) (quoting Liberman v. Gelstein, 80 N.Y.2d 429, 434-35 (N.Y. 1992)).  Moreover, "truth is an absolute defense to an action based on defamation." Fine v. ESPN, Inc., 11 F. Supp.3d 209 (N.D.N.Y. Mar. 31, 2014) (quoting Goldberg v. Levine, 97 A.D.3d 725 (N.Y. App. Div. 2012)).

Plaintiff's claim for defamation is subject to a one-year statute of limitations. See N.Y. C.P.L.R. § 215(3).  Under New York law, "[n]o court shall extend the time limited by law for the commencement of an action." N.Y. C.P.L.R. § 215(3).  Claims for slander "generally accrue[] on the date of the first publication." Rissetto v. County of Clinton, 8:15-CV-720 (GTS/CFH), 2016 WL 4530473, at *33 n.105 (quoting Hoesten v. Best, 34 A.D. 3d 143, 150 (N.Y. App. Div. 2006), accord. Karam v. First Am. Bank of New York, 190 A.D.2d 1017, 1018 (N.Y. App. Div. 4th Dept. 1993) ("In an action for slander, the

---

[6]  Copies of all unpublished decisions cited within this Report-Recommendation & Order have been provided to plaintiff.

Statute of Limitations runs from the time of the utterance, not the discovery of the slanderous matter.")).

As the statements plaintiff appears to allege to be defamatory were made in February and November 2019, see Compl. at 14, and plaintiff commenced this action in September 2021, even if plaintiff could demonstrate all of the elements of slander,[7] any such claim is clearly barred by the statute of limitations and must be dismissed.

### III. Conclusion

Generally, it is preferred that pro se plaintiffs be provided at least one opportunity to amend their complaints.  Given that plaintiff cannot cure the defects in his slander claim, as the statute of limitations is expired, it is recommended that this claim be dismissed with prejudice.  See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (concluding that an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Further, as plaintiff's Title VII claims against the individual defendants are barred, it is also recommended that these claims be dismissed without prejudice. See id.

---

[7]  Even assuming, arguendo, that the statements plaintiff intends to identify as slander are the allegations that (1) he failed to timely report an incident of sexual assault; and (2) yelled at a subordinate, slammed his hand on a table, and cursed, suffice to injure his reputation, plaintiff's complaint does not make clear how any a false statement harmful to his character was "published" to a third party.

Insofar as plaintiff may seek to raise a section 1983 claim, although plaintiff does not identify any constitutional right that was violated and does not allege that any state actors were involved or that any named defendants acted under color of state law, even though it appears highly unlikely, keeping in mind the special solicitude due to the pro se plaintiff, it is potentially possible that he may amend to allege such additional facts to be able to state a section 1983 claim.  Accordingly, it is recommended that, to the extent a liberal reading of plaintiff's complaint suggests that he seeks to raise a section 1983 claim against the individual defendants, such claim is dismissed without prejudice. Finally, to the extent plaintiff seeks to bring a claim for retaliation and discrimination of his race and sex in violation of Title VII against defendant Northern Rivers, it is recommended that this claim be dismissed without prejudice and with opportunity to amend.

Should the district judge adopt this Report-Recommendation & Order and permit plaintiff an opportunity to amend his complaint,[8] plaintiff is advised that any amended complaint supersedes and replaces the original complaint in its entirety.  Thus, plaintiff must reallege all facts and claims on which he wishes to proceed and may not incorporate any portion of the original complaint by reference. See Shields v. Citytrust v. Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); see also N.D.N.Y. L.R. 7.1(a)(4) (noting that an amended complaint supersedes and replaces an original pleading in all respects and that "a party shall not

---

[8]  Plaintiff is advised to await the District Judge's review of this Report-Recommendation & Order prior to filing any amended complaint in order to see whether the District Judge will permit amendment of his claims.

incorporate any portion of its prior pleading into the proposed amended pleading by reference."). Further, if plaintiff is permitted an opportunity to file an amended complaint, it must satisfy the plausibility standard outlined in Ashcroft v. Iqbal, 556 U.S. 662 (2009), which requires plaintiffs to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (internal citations omitted).

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiffs in forma pauperis application, dkt. no. 2, is **GRANTED** for the purpose of filing; and it is

**RECOMMENDED**, that plaintiff's claims for (1) discrimination and retaliation in violation of Title VII against the individual defendants, and (2) slander against all defendants, Dkt. No. 1, be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's claims for (1) discrimination and retaliation in violation of Title VII against his former employer Northern Rivers, and (2) section 1983 claim, Dkt. No. 1, be dismissed **WITHOUT PREJUDICE and with opportunity to amend**; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order and permits plaintiff an opportunity to amend his complaint, and if plaintiff fails to file an amended complaint within the timeframe set forth by the District Judge, the Clerk of the Court will close this case without further order of the Court.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[9]

Dated: March 29, 2022
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9]  If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(c).